PURYEAR *v.* FOSTER, sheriff, *et al.*

One who, by himself or another, has bid off property at sheriff's sale, is generally competent under the evidence act of 1889 to testify in his own favor against the administrator of the defendant in the execution under which the sale was made, as to any fact involved in the controversy, except " as to transactions or communications with such deceased persons." The sheriff being still alive, transactions and communications with him may be proved the same as if the defendant in execution were alive also. So may any knowledge of the witness as to the existence and contents of the lost execution, entries thereon, contents of other lost papers, destroyed records, etc., etc.

March 27, 1893. Argued at the last term.

Before Judge MADDOX. Walker superior court. February term, 1892.

A petition was brought, February 23, 1886, by John Puryear, to require Foster, sheriff, to make to him a deed to a certain land lot in pursuance of a sale alleged to have been made by Strange, former sheriff, on the first Tuesday in August, 1873, under a mortgage *fi. fa.*

alleged to have issued from the superior court in favor
of John Y. Jackson & Co. against Rial Stancel, at
which sale Puryear claimed to be the purchaser. He ex-
cepts to the rejection of evidence, and to the grant of a
nonsuit. His application was resisted by the adminis-
trators of Stancel who had died. This latter fact was
the ground of objection to the testimony which was
ruled out. The following evidence was introduced
without objection: All the records and papers of every
kind belonging to the office of the clerk of the superior
court, including the files of the newspapers containing
the official advertisements of sheriff's sales, were de-
stroyed by fire in 1883. Strange was sheriff in 1873,
and published his advertisements in the Rome Courier.
He now lives in Indian Territory. He had no office in
the court-house; his office was in his pockets. The
clerk of the superior court (who has been in office con-
tinuously since 1872) has no recollection of the fore-
closure of a mortgage in favor of John Y. Jackson & Co.
against Stancel, or of any such papers ever having been
of file. Foster has been sheriff continuously since 1885.
No *fi. fa.* in favor of John Y. Jackson & Co. against
Stancel ever came into his hands, nor was any such *fi. fa.*
turned over to him by his predecessor in office, nor
has he ever seen such *fi. fa.* since he has been sheriff.
Strange was succeeded by Mize (deceased), who was suc-
ceeded by Withers (deceased), who was succeeded by
another Mize (deceased), who was succeeded by Patter-
son. Patterson was sheriff before the court-house was
burned (February 3, 1883). No *fi. fa.* in favor of John
Y. Jackson & Co. against Stancel was ever in his posses-
sion; he never saw any such *fi. fa.* or any other such
papers as claimed by plaintiff. Puryear testified that
Strange signed and delivered to him, on the day it bears
date, the following receipt which was exhibited to the
witness and introduced in evidence: "Received of John

Puryear nine dollars payment of costs on mortgage *fi. fa.* of J. Y. Jackson & Co. *vs.* Rial Stancel. This August 5th, 1873. Wm. Strange, sheriff." He further testified that, soon after Strange went out of office, he went to Patterson, then the sheriff, in search of said *fi. fa.*, and failed to find it in his office or among his papers, and has since made diligent search and failed to find it. J. W. Jackson testified that he was a member of the firm of John Y. Jackson & Co. He thought the land in question was sold in 1869, and Strange was sheriff as he remembered. John Puryear bid off the land for John Y. Jackson & Co. The reason why a deed was not made at the time of sale was, because they were in debt and hoped to sell the land soon after the sheriff's sale, and did not demand the deed, thinking that when they did sell the lot they would get the sheriff to make to their vendee instead of to them. Subsequently to the sale, in pursuance of an arrangement between the plaintiff, John Y. Jackson & Co. and John Puryear, said Puryear was entitled to a deed to the land. Witness does not know that they ever made but one effort to sell it; thinks they advertised it for sale only once, in the Rome Courier; does not know who levied on the land; was not present when it was sold; thinks it brought $50; the *fi. fa.* should have been credited with that sum less costs. Plaintiffs in *fi. fa.* had the land bid off for them.

Following is the rejected testimony: By John Puryear, that Strange as sheriff sold at public sale on the first Tuesday in August, 1873, the land in question, as the property of Stancel, under a mortgage *fi. fa.* issued from the superior court in favor of John Y. Jackson & Co. against Stancel; that witness bid off the land at sheriff's sale, and no deed was made to him by the sheriff at the time; that some time afterwards he saw the mortgage *fi. fa.* under which the sale was made, in the office of the clerk of the superior court, having

the entry of levy on the land and of the sale on the day named, to John Puryear for $50, and the disposition of the money arising from the sale; that John Y. Jackson & Co. had a mortgage executed by Stancel to them to secure $500 due them by him, and the land in question was included in the mortgage; and that this mortgage was regularly foreclosed in the superior court, *fi. fa.* issued thereon, and Strange as sheriff levied the *fi. fa.* upon the land, and sold it at regular sheriff's sale on the first Tuesday in August, 1873, and witness bid it off for $50. By J. W. Jackson, that John Y. Jackson & Co. had a mortgage given to them by Stancel for about $500 principal, which they foreclosed in 1868 or 1869, to the best of his recollection; that execution issued on the foreclosure, and was levied on the land in question; that after the sale of the land Stancel came to see witness to get permission to cut three trees off of the land, and said he thought witness was the right one to come to, as he did not want to get into any trouble about it; that witness told him to go ahead and get the trees; that Stancel recognized John Y. Jackson & Co. as owners of the land (or their survivors) after the sale, so far as witness knows; he never heard of Stancel claiming any rights on the land after the sale, earlier than 1882.

LUMPKIN & SHATTUCK and PAYNE & WALKER, by brief, for plaintiff.

No appearance for defendants.

BLECKLEY, Chief Justice.

The evidence rejected because of the supposed incompetency of the witnesses Puryear and Jackson, on account of the death of Stancel, appears in the official report. Under the evidence act of 1889, the whole of Puryear's evidence was admissible. None of it referred to any transaction or communication with Stancel. It related to a transaction with the sheriff, who is still alive,

and to the existence and contents of lost documents and destroyed records. The statement that the mortgage referred to was executed by Stancel meant simply that the mortgage purported to be so executed. As we understand the evidence, the witness did not mean to testify as a fact that it was so executed, or that he knew personally of its execution. He meant to describe and identify the mortgage to which the judgment of foreclosure mentioned by him related, and give the contents of the mortgage so far as was requisite to the proceeding in hand. The judgment of foreclosure would prove the execution of the mortgage, and that judgment being destroyed, the witness was competent to prove its contents. The scheme of the evidence was for the witness to prove the judgment and the judgment to prove the execution of the mortgage. With respect to the testimony of Jackson, some of it was clearly inadmissible if Jackson had any interest in this proceeding, but some of it was admissible whether he was interested or not. His interest is not clearly apparent, for although Puryear originally bid off the land for Jackson's firm and that firm withdrew from the purchase and allowed Puryear to take the benefit of it and have the conveyance made to himself, yet, so far as appears, the firm made no warranty in this transaction with Puryear; and whether he fails or succeeds in this application for a deed from the sheriff, no liability upon Jackson or his firm will necessarily arise or be discharged. Even if we should be mistaken in this, Jackson was certainly competent to prove the foreclosure of the mortgage, the levy of the execution, and the sale of the land under it. It strikes us that Jackson's interest may not be clear enough to exclude him as to any of his proposed evidence, but, of course, this question can be cleared up hereafter. What we adjudge at present is this: the court erred in holding Jackson and Puryear incompetent to testify as to some

of the facts ruled out, they being competent to testify to all the enumerated facts, except that the mortgage was in fact made by Stancel and the further fact that Stancel applied for and obtained leave to cut trees on the land. Of course, what Stancel said to Jackson and Jackson to him would be included in this exception.

*Judgment reversed.*